1  LEONARDO M. RAPADAS
   United States Attorney
2  MARIVIC P. DAVID
   Assistant U.S. Attorney
3  Suite 500, Sirena Plaza
   108 Hernan Cortez Avenue
4  Agana, Guam 96910
   Telephone: (671) 472-7332/7283
5  Telecopier: (671) 472-7334

6  Attorneys for United States of America

FILED
DISTRICT COURT OF GUAM
APR 20 2006
MARY L.M. MORAN
CLERK OF COURT

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF GUAM

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | MAGISTRATE CASE NO. 05-00045 |
| Plaintiff, ) | GOVERNMENT'S MOTION FOR RECONSIDERATION |
| vs. ) | |
| JUSTIN KEITH GUERRERO, and ) RENEA DORLEEN CRUZ-TAITANO, ) | |
| Defendants. ) | |

The United States, through its undersigned attorneys, hereby moves this Honorable Court to reconsider its order of March 29, 2006, granting defendants' JUSTIN KEITH GUERRERO ("Guerrero") and RENEA DORLEEN CRUZ-TAITANO ("Cruz-Taitano") motions to suppress.

In Terry v. Ohio, 392 U.S. 1, 19, n. 16 (1968), the Supreme Court noted that "not all personal intercourse between policemen and citizens involves 'seizures' of persons. Only when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen may we conclude that a 'seizure' has occurred." In determining wheher a seizure has occurred, the courts employ an objective test: a seizure takes place "only if, in view of all of the circumstances surrounding the incident, a reasonable person would have believed that he was not free to leave." Michigan v. Chesternut, 486 U.S. 567, 573 (1988) quoting United States v. Mendenhall, 446 U.S. 544, 554 (1980).

The supreme Court in <u>Florida v. Bostick</u>, 501 U.S. 429, 434 (1991), also reiterated such principles and emphasized that "mere police questioning does not constitute a seizure." The Court summarized the kinds of police conduct that are permissible without implicating the Fourth Amended, <u>id</u>., at 434-435 (citations omitted):

> We have stated that even when officers have no basis for suspecting a particular individual, they may generally ask questions of that individual; ask to examine the individual's identification; and request consent to search his or her luggage - - as long as the police do not convey a message that compliance with their request is required.

<u>Bostick</u> involved an interview aboard a bus. In <u>Bostick</u>, two police officers, after inspecting the defendant's bus ticket, "persisted and explained their presence as narcotics agents on the lookout for illegal drugs" before "request[ing] the defendant's consent to search his baggage." 501 U.S. at 431-432. The Court stated that "[t]here is not doubt that if this same encounter had taken place before Bostick boarded the bus or in the lobby of the terminal, it would not rise to the level of a seizure. 501 U.S. at 434. The Court made clear in <u>Bostick</u> that the focus of the Fourth Amendment 'seizure' inquiry is whether the police conducts is so coercive as to make a reasonable person feel compelled to respond to their requests. Where a citizen encounters a police officer in a setting that has some inherently restrictive aspects to it, not caused by the police, "the appropriate inquiry is whether a reasonable person would feel free to decline the officers' request or otherwise terminate the encounter." 501 U.S. at 436.

In this case, law enforcement officers encountered the defendants in a hotel setting. Officers Barbara Tayama and John Duenas were among several agents in the Reef Hotel who were assisting in the investigation of a potential methamphetamine manufacturing operation in Room 755 of the hotel. It was not unusual that officers would anticipate encountering other person in the area who may serve as drug customers and dealers. The execution of the search warrant in Room 755 as well recovered not only evidence of drugs, the potential for manufacturing drugs, and also distribution of it. It was in this context that Tayama and Duenas encountered the defendants: both times in the hotel lobby and the 7th floor of the hotel near Room

755. Both agents noticed also that Shardae Love, who had been reported to be one occupant of Room 755, exhibited a nervous reaction when she saw the defendants. Nervous behavior is a pertinent factor in determining reasonable suspicion. Illinois v. Wardlaw, 528 U.S. 119-120 (2000).

The officers here were justified in stopping defendants to investigate whether they might be engaged in criminal activity, not limited solely to the manufacturing of drugs. Defendant Cruz-Taitano confirmed that she and co-defendant Guerrero were there to see a "Joe""Mesa," an individual whose name was also reported to be one of Room 755's occupants. Guerrero, while evasive in his explanation to the officers, also stated the he was there to visit his friend, "Joe." Evasive behavior is also a pertinent factor in determining reasonable suspicion. Id.

The Ninth Circuit has considered the experience and expertise of officers and recognized that conduct that may appear innocent to the untrained observer has added significance to an experienced officer. United States v. Buckner, 179 F.3d 834, 837 (9th Cir.), cert. denied, (2000). Wardlaw, 528 U.S. at 126 (the fact that conduct is susceptible of innocent explanation does not establish a Fourth Amendment violation). As well, in United States v. Sharpe, 470 U.S. 675, 686 (1985), which involved a 20-minute detention of a suspect, the Supreme Court cautioned that a court in assessing the duration of a detention in an investigative context "should take care to consider whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." Here, the officers' actions were both reasonable and diligent considering the swiftly developing circumstances of the search of the hotel room, its occupants and discovery of drugs, drug-manufacturing and drug-distribution materials, and other drug paraphernalia.

The officers here were also justified in frisking defendants to ensure they were not carrying any weapons, since it is not unreasonable that weapons may exist in the vicinity of narcotics transactions. Wardlaw, 528 U.S. at 120-122; United States v. Post, 607 F.2d 847, 851 (9th Cir. 1979). Also, the protective pat-down search of defendant Cruz-Taitano was not limited

only to her person but also could have been extended to her purse since "the police officers had a right to examine a hiding place where a weapon could be concealed that the suspect could reach if [she] broke away from the officers," United States v. Garcia, 909 F.2d 389, 392 (9th Cir. 1990). Such search would have led to the inevitable discovery of the pipe and drugs in defendant's purse. Michigan v. Long, 436 U.S. 1032, 1049-52 (1983). However, under the circumstances, Cruz-Taitano herself pointed out the pipe to Tayama. Moreover, it was not unreasonable for the officers to associate that paraphernalia, obtained from someone who was meeting an occupant of Room 755, with the criminal activity that officers uncovered in Room 755.

No Fourth Amendment violation occurred. Thus, defendant's statements to agents at the station after receiving Miranda warnings were voluntary and untainted by any police illegality.

RESPECTFULLY SUBMITTED this 20th day of April, 2006.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: *[signature]* Aaron V. Johnson for
MARIVIC P. DAVID
Assistant U.S. Attorney

-4-

Case 1:05-mj-00045    Document 57    Filed 04/20/2006    Page 4 of 4